```
                                                              1

 1            IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF VIRGINIA

 3                      Alexandria Division

 4   - - - - - - - - - - - - - - - x

 5   TIARRA FAIN,                  :

 6        Plaintiff,               :

 7      vs.                        : CASE NO. 3:12-CV-293

 8   RAPPAHANNOCK REGIONAL JAIL,   :

 9   et al.,                       :

10        Defendants.              :

11   - - - - - - - - - - - - - - - x

12

13        Deposition of OFFICER JENNIFER D. GIUFFRA

14                    Stafford, Virginia

15              Tuesday, February 12, 2013

16                       1:41 p.m.

17

18

19

20   Job No.: 32439

21   Pages: 1 - 22

22   Reported by: Sarah M. Bickel, RPR
```

**EXHIBIT 3**

```
                                                              2
 1          Deposition of OFFICER JENNIFER D. GIUFFRA,
 2   held at the offices of:
 3
 4          RAPPAHANNOCK REGIONAL JAIL
 5          1745 Jefferson Davis Highway
 6          Stafford, Virginia 22554
 7          (540) 288-5245
 8
 9
10
11
12
13
14
15          Pursuant to Notice, before Sarah M.
16   Bickel, Registered Professional Reporter and Notary
17   Public in and for the Commonwealth of Virginia.
18
19
20
21
22
```

DEPOSITION OF OFFICER JENNIFFER D. GIUFFRA
CONDUCTED ON TUESDAY, FEBRUARY 12, 2013

3

```
 1                A P P E A R A N C E S

 2   ON BEHALF OF THE PLAINTIFF:

 3        WILLIAM G. SHIELDS, ESQUIRE

 4        The Shields Law Firm, PLLC

 5        11512 Allecingie Parkway

 6        Suite C

 7        Richmond, Virginia 23235

 8        (804) 594-3966

 9

10

11

12   ON BEHALF OF THE DEFENDANTS:

13        ALEXANDER FRANCUZENKO, ESQUIRE

14        COOK, CRAIG & FRANCUZENKO, PLLC

15        3050 Chain Bridge Road

16        Suite 200

17        Fairfax, Virginia 22030

18        (703) 865-7480

19

20

21

22
```

DEPOSITION OF OFFICER JENNIFFER D. GIUFFRA
CONDUCTED ON TUESDAY, FEBRUARY 12, 2013

4

1     C O N T E N T S

2  EXAMINATION OF OFFICER JENNIFER D. GIUFFRA        PAGE

3     BY MR. SHIELDS                                 5

4

5           E X H I B I T S

6       (Attached to transcript)

7  GIUFFRA DEPOSITION EXHIBIT                        PAGE

8  Exhibit 1    Hospital Duty Sheets                 16

5

```
 1                  P R O C E E D I N G S
 2            OFFICER JENNIFER D. GIUFFRA
 3   having been first duly sworn, testified as follows:
 4         EXAMINATION BY COUNSEL FOR THE PLAINTIFF
 5            BY MR. SHIELDS:
 6         Q   Would you state your name, please, for the
 7   record.
 8         A   Jennifer D. Giuffra.
 9         Q   And how are you employed?
10         A   I am employed at the Rappahannock Regional
11   Jail.
12         Q   As what?
13         A   I'm currently a case manager, and I am
14   still a certified officer as well.
15         Q   What's a case manager?
16         A   It's almost a social worker position
17   within the jail.
18         Q   In April of 2010, how were you employed?
19         A   Officer.
20         Q   I'll show you a hospital duty list that
21   has your name at the bottom of it, and I'm not sure
22   if whether it's on here anywhere else or not, and ask
```

9

1 respect to restraints at the hospital for pregnant
2 ladies, if you know?
3     A  Pregnant --
4     Q  I'm talking about the jail's procedures.
5     A  The jail's procedures at the time were
6 after delivery, it was one arm and one leg.
7     Q  All right. Prior to delivery?
8     A  Prior to delivery, if they're in active
9 labor, it would be -- it -- if they're in active
10 labor, you would remove restraints as needed. It
11 depends on the medical situation. It was required
12 for her to be restrained up until absolutely
13 necessary, then it's removed.
14     Q  And that's the policy here in 2010; is
15 that right?
16     A  Correct.
17     Q  Has that policy changed since then?
18     A  I do not know.
19     Q  Who decided when was as long as possible?
20     You said they were to be restrained as
21 long as possible.
22     A  Right.

10

1  Q  Who would make that determination?

2  A  Basically the medical staff, if it hinders
3  medical treatment.

4  Q  If it did not hinder medical treatment,
5  would the restraints come off?

6  A  No.

7  Q  Even if she was in active labor, or do you
8  know?

9  A  I -- there's -- there's different stages
10 of active labor, so it would depend on the situation.

11 Q  Have you had occasion to talk about what
12 occurred in this case during delivery to Ms. Fain?

13 A  Did I have -- talk to her?

14 Q  No, no. Talk to any of the other guards
15 or anything about whether she was restrained or not
16 during delivery.

17 A  No.

18 Q  So you don't know yourself, one way or the
19 other, do you?

20 A  No.

21 Q  And nobody has told you, one way or the
22 other?

**EXHIBIT 3**

12

1   it was medically necessary for procedures where they
2   couldn't have any metal. If they had to use the
3   restroom, you took them off. And then if they were
4   in full, active pushing labor or it interfered with
5   IVs or anything special that was attached to the arm.
6       Q   But it had to be a specific condition?
7       A   Correct.
8       Q   It wasn't just a general policy of
9   removing them for treatment?
10      A   Correct.
11      Q   Now, can you describe the restraints that
12  were used on pregnant ladies?
13          MR. FRANCUZENKO:  Object to the form.
14          Go ahead.
15          BY MR. SHIELDS:
16      Q   At this time in 2010, what kind of
17  restraints did you have that you would use?
18      A   They're leather restraints. They're
19  different sizes. One set would be for the legs and
20  one set would be to go around the waist, and it had
21  padded cuffs that actually lock onto the wrists.
22      Q   What does it lock with?