UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

TIARRA FAIN,

        Plaintiff,                        Case No.: 312CV293

v.

RAPPAHANNOCK REGIONAL JAIL, ET.AL.

        Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, Tiarra Fain, by counsel, in response to the Defendants' Motion for Summary Judgment, and provides the following points and authorities.

### OVERVIEW

The Defendants' position is based on an overly narrow view of what the Plaintiff is asserting as her cause of action. As stated in ¶ forty-five (45) of the Complaint, Plaintiff asserts that the "practice and policy of requiring mechanical restraints on pregnant women during transfer to the hospital and while in labor, during delivery, and during post-partum recovery in the absence of a specific and individualized assessment that such women present a substantial flight risk. . ." violates the Eighth Amendment. Plaintiff's assertions are not simply saying that it is a violation of the Eighth Amendment to restrain pregnant women during delivery itself; but it is a violation of the Eighth Amendment to restrain pregnant women throughout the delivery process from the time they leave the jail, until such time as they are returned.

## MATERIAL FACTS THAT ARE IN DISPUTE

1. First and foremost Plaintiff adamantly maintains that she was restrained throughout labor, delivery, and follow-up care (Fain deposition p. 53-58), in spite of what Dr. Uzochukwu said in her deposition.

2. Interestingly, the only guard who says Ms. Fain was not restrained was Stone and she only said that because that's how she always did it (Stone deposition p. 12). No guard told the investigator they took the restraints off (Higgs deposition p. 37).

3. Defendant Joseph Higgs is the Superintendent of Rappahannock Regional Jail (Higgs deposition P. 5); and as such, he is responsible for setting the policies of the jail (see Higgs Answer to Complaint and Higgs deposition p. 39-42). Tiarra Fain delivered her child on April 18, 2010. The jail policies called for restraint of medical personnel, including pregnant women during transport (Higgs deposition p. 8-9).

4. Defendant Joseph Higgs admitted there has been a change of policy to specifically deal with pregnant women since Ms. Fain delivered (Higgs deposition p. 12).

5. Defendant Joseph Higgs testified that the policy of the jail in April of 2010, was to remove restraints from pregnant inmates only at the request of hospital personnel, for immediate medical procedure, and to be immediately reapplied (Higgs deposition p. 15). At that time the policy was, as a minimum, restraining the pregnant inmate by wrist and ankle to be removed only on medical order (Higgs deposition p. 17; Higgs Exhibit 1).

6. Defendant Joseph Higgs admitted that Tiarra Fain had no history of violence (except that she was a criminal) and was not a flight risk (Higgs deposition p. 21).

7. Defendant Joseph Higgs ordered the investigation into the Tiarra Fain incident after it became a matter of public information; and admitted that the investigation found that no

officer ever said that he or she could remember ever taking the restraints off of Ms. Fain for her labor and delivery (Higgs deposition p. 23-24, 29).

8. Defendant Joseph Higgs admitted that Ms. Fain had made a written complaint about being shackled <u>during delivery</u>, and that the jail's answer was that she was an inmate, rather than a denial that she had been restrained during delivery (Higgs deposition p. 31 and Exhibit 4).

9. Defendant Joseph Higgs admitted that the normal procedure during the time of Ms. Fain's delivery was for a pregnant lady to be restrained by handcuffs and leather restraints (Higgs deposition p. 36); except that during delivery or medical request, the guard could remove them.

10. Defendant Joseph Higgs admitted that since Ms. Fain's delivery, the policy has been changed in order to make it clear that restraints are to come off prior to giving birth (Higgs deposition p. 46-47 and Exhibit 6).

11. Defendant Joseph Higgs was definitely involved in the restraint of Tiarra Fain, because he set the policy and supervised the guards.

12. Defendant Tina Schoolfield was a correctional officer at the time Ms. Fain delivered her baby. She admitted that she did guard Ms. Fain in the hospital (Schoolfield deposition p. 6), and was, in fact, the guard who relieved Officer Stone (Schoolfield deposition p. 8).

13. Defendant Tina Schoolfield testified that since Ms. Fain had already delivered when she got there, she would see that Ms. Fain was restrained (Schoolfield deposition p. 10), and that the Rappahannock Regional Jail's policy was for two (2) restraints (Schoolfield deposition p. 11).

14. Defendant Tina Schoolfield admitted that Ms. Fain was not going to go anywhere in the condition that she was in at that time (Schoolfield deposition p. 11).

15. Defendant Tina Schoolfield denies refusing the order to take the restraints off; and denies hiding them under the blanket (Schoolfield deposition p. 16-17); but admits the policy was for two (2) restraints when feeding the baby and that has since changed (Schoolfield deposition p. 18).

16. Defendant Officer Reed testified that apparently the current policy, was not to restrain during active labor, but the medical department decided what was and was not active labor (Reed deposition p. 9). She admitted that ladies were restrained after giving birth (Reed deposition p. 10); and that new mothers were restrained while feeding (Reed deposition p. 11). Defendant Reed stated that policy required restraining pregnant women during transport (Reed deposition p. 13), and that pregnant ladies are to be restrained until they enter active labor; but that he is unsure of the policy after they are in active labor (Reed deposition p. 13-14). Basically Defendant Reed testified that the policy is that the restraints come off only when the doctor says the lady is in active labor (Reed deposition p. 14-15).

17. Neither Defendant Reed nor Schoolfield could say whether or not Ms. Fain was restrained at the time of delivery (Reed deposition p. 15) (Schoolfield deposition p. 10).

18. Plaintiff would like to dismiss Defendant Reed from the suit, as he was apparently not involved directly in Ms. Fain's hospital stay.

19. Defendant Officer Lewis testified that the policy was that Ms. Fain should be tethered by an arm and a leg after delivery; and that she was still restrained when he watched her at sometime after the delivery.

20. Defendant Officer Giuffra recalls being on duty the day that Ms. Fain delivered but not during the delivery. She does not recall if Ms. Fain was restrained or not (Giuffra deposition p. 7-8).

21. Defendant Giuffra stated that the jail policy was to remove the restraints "<u>as needed</u>" depending on the medical situation while the inmate was in active labor (Giuffra deposition p. 9); and that the Rappahannock Regional Jail's policy required for pregnant ladies to be restrained up until absolutely necessary for its removal (Giuffra deposition p. 9).

22. Significantly, Officer Giuffra stated that if the restraints didn't hinder the medical care, they did not come off at all even in active labor (Giuffra deposition p. 10).

23. Defendant Giuffra also testified that she had been present when other inmates delivered babies from Rappahannock Regional Jail and the restraints only came off if it was medically necessary (Giuffra deposition p. 11-12).

24. Defendant Giuffra confirmed that if Ms. Fain was not in active labor, she would be restrained (Giuffra deposition p. 18).

25. Dr. Chizoba Uzochukwu testified that she had ordered the guard to remove the restraints so that Ms. Fain would not be restrained during the course of the labor and delivery (Uzochukwu deposition p. 10-11).

26. Dr. Uzochukwu described the delivery process as follows: "I would say less than five minutes because I intervened pretty rapidly, and she was pretty much ready to be delivered. Baby's heart rate was deceling, and I had to make a decision for immediate delivery and get her in position. And I performed that, and we had baby literally in less than five minutes from the time." (Uzochukwu deposition p. 25).

27. Dr. Uzochukwu agreed that the use of restraints in any form during labor and delivery was unacceptable practice (Uzochukwu deposition p. 29).

28. Dr. Uzochukwu admitted that when she first saw Ms. Fain at eight o-clock in the morning, in the hospital, that she did not know whether Ms. Fain was restrained or not (Uzochukwu deposition p. 29-30), and that that is when she instructed the guards to take off the restraints.

29. Dr. Uzochukwu testified that Ms. Fain delivered in the evening, so she probably saw her right after the change in shift, about eight (8) hours later (Uzochukwu deposition p. 31).

30. Significantly, Dr. Uzochukwu stated that from a medical standpoint, Ms. Fain did not go into labor at all and instead required induction (Uzochukwu deposition p. 33).

31. Dr. Uzochukwu did not consider the eight (8) hour period in the hospital to be labor (Uzochukwu deposition p. 33-35).

32. Dr. Uzochukwu did admit, however, that the eight (8) hour run up until the delivery is the latent phase of stage one labor (Uzochukwu deposition p. 37).

33. Dr. Uzochukwu did admit that the baby had a nuchal cord wrapped around his neck (Uzochukwu deposition p. 34), and that the baby's heart rate was descending rapidly (Uzochukwu deposition p. 34).

34. Dr. Uzochuckwu admitted that she did not know whether or not Ms. Fain was restrained during that eight (8) hour period (Uzochuckwu deposition p. 38).

35. Dr. Uzochukwu testified that the whole process and delivery took about five (5) minutes or so, and that it was done quickly because of the declining heart rate of the child (Uzochukwu deposition p. 35).

36. Dr. Uzochukwu admitted there was always a guard present during the labor and delivery (Uzochukwu deposition p. 38).

37. Dr. Uzochukwu admitted that prisoners are usually restrained in the post-partum unit (Uzochukwu deposition p. 39).

38. Dr. Uzochukwu testified that Ms. Fain was not restrained during the actual delivery, but that tenor of her answers indicates that her testimony is at least, to some degree, based upon usual practice (Uzochukwu deposition p. 39).

39. Dr. Uzochukwu admitted that she was only with Ms. Fain during labor and delivery for about fifteen (15) minutes (Uzochukwu deposition p. 40); and that other than that, she did not know what happened with the restraints (Uzochukwu deposition p. 40).

40. The correctional officers all said that the restraints remained on until such time as active labor began, and only then were they removed. That would mean that in this case, the triggering event for removal of the restraints never occurred.

41. Ms. Fain adamantly denies the claim of Dr. Uzochukwu, that she was not restrained.

42. Dr. Uzochukwu's claim deals only with the delivery, which is fifteen (15) minutes long; otherwise, she admits she does not know of whether or not Ms. Fain was restrained.

43. The correctional officers all state that the triggering event for removal of restraints is active labor; and yet, this lady never went into active labor according to Dr. Uzochuckwu.

44. Tiarra Fain says that she was having contractions, and was in labor for the eight hours she lay in the prep room (Fain deposition p. 56-57).

45. Tiarra Fain is adamant that she was restrained during the delivery itself (Fain deposition p. 57-59 and 63-67).

46. Defendant Officer Stone was the officer on duty at the time, and she could not say that she ever recalled taking the restraints off during Ms. Fain's delivery (Stone deposition Exhibit 1).

47. Defendant Stone claimed that Ms. Fain was not restrained during deliver, because that was the way she always did it (Stone deposition p. 7-12).

48. Defendant Stone says she did everything by the rules and regulations of the Rappahannock Regional Jail (Stone deposition p. 18)

# DISAGREEMENTS WITH DEFENDANTS' STATEMENTS OF MATERIAL FACTS NOT IN DISPUTE

1. Defendant Joseph Higgs set the restraints policy. Defendants' Schoolfield, Reed, Lewis, and Giuffra were all involved in overseeing Ms. Fain in the hospital; hence, restraining Ms. Fain during this process; Plaintiff does not agree with the Defendants' assertion that Defendants' ¶ one (1) is undisputed.

2. There were complications; the umbilical cord was wrapped around the baby's neck (Uzochukwu deposition p. 34) and the baby was induced (Uzochukwu deposition p. 33). The baby's heart rate was dropping fast (Uzochukwu deposition p. 34). Plaintiff disagrees with Defendants' assertion in ¶ five (5).

3. Ms. Fain contends Dr. Uzochukwu told the officer to take the restraints off when she first got to the hospital (Fain deposition p. 58-59); but not during delivery. Plaintiff does not agree with Defendants' ¶ nine (9).

4. Plaintiff's emotional distress involved psychiatric care or attention at Fluvanna Correctional Facility, and suicide threat (Fain deposition p. 128). Plaintiff does not agree with Defendants' assertions in ¶¶ ten (10) and eleven (11).

## PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

It is undisputed that Ms. Fain was restrained at all times during her trip to Mary Washington Hospital for delivery on April 18, 2010. The only dispute is whether or not she was restrained for the fifteen (15) minutes or so of delivery itself.

It is also undisputed that this restraint was Rappahannock Regional Jail's policy in 2010.

## STANDARD OF REVIEW

Plaintiff agrees that the Standard of Review that under Rule 56, for purposes of summary judgment, is that the facts must be viewed and all justifiable incidences be drawn in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Under Rule 56, summary judgment is not appropriate if there are genuine issues of material fact that need to be resolved.

## ARGUMENT

Defendants cite no case saying shackling during pregnancy **does not** violate the Eighth Amendment. The following cases do hold that shackling pregnant women during labor is an Eighth Amendment violation: Nelson v. Correctional Medical Services, 583 F 3d. 522 (8th Cir 2009); Women Prisoners of D.C. v. District of Columbia, 93F. 3d910 (D.C. Cir 1996); Brawley v. State of Washington, 712 F. Supp 2d 1208 (E.D. Wash. 2010); see also Zaborowski v. Dort et al, case # 08c6946, USDC, No. Dist. IL. (12/20/2011).

The practice of shackling pregnant women has been prohibited by the Federal Bureau of Prisons; and recently by California, Colorado, Illinois, New Mexico, New York, Pennsylvania, Texas, Vermont, Washington, and West Virginia, (see Mothers Behind Bars, National Women's Law Center, 2010). Virginia joined the list this year

## I. EIGHTH AMENDMENT

The eighth Amendment expressly prohibits the infliction of cruel and unusual punishments. U.S. Const. Amen. VIII. It protects inmates from inhumane treatment conditions while in prison. Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment. To prove an Eighth Amendment violation, the prisoner must prove two (2) elements:

I. That objectively the deprivation of a basic human needs was sufficiently serious; and

II. That subjectively, the prison official acted with a culpable state of mind. Johnson v. Quinones, 145 F. 3d 164 (4th Cir., 1998).

Pregnancy constitutes a serious medical condition. Plaintiff's expert, Carolyn Sufrin, in her opinion, identifies a number of reasons why shackling pregnant women in labor, delivery or recovery is medically dangerous for both mother and child. (see attached expert report, which is also cited by the Defendants in their brief). These emergencies included the fetus' heart rate dropping during labor (which occurred in this case); indications for emergency cesarean, such as a drop in fetus' heart rate (considered in this case, but not done); Problems in the delivery itself, and hemorrhaging (the two did not occur in this case). Dr. Sufrin's assessment was confirmed by Dr. Uzochukwu. She testified that shackling during delivery was unacceptable (Uzochukwu deposition p. 29) and by common sense. See also Nelson v. Correctional Medical Services, Inc., 583 F. 3d

522, 533 (8th Cir. 2009). The objective part of the Eighth Amendment test under Johnson is clearly met.

Subjectively, the Plaintiff must establish that the prison officials acted with a culpable state of mind. See Johnson v. Quinones, 145 F. 3d 164 (4th Cir. 1998). This generally requires proof that the correctional officials violated a known constitutional right to the prisoner. Nelson v. Correctional Medical Services, *supra*.

The shackling or restraint of pregnant women during labor and delivery is well established as a constitutional violation, and was well established prior to the April 18, 2010 delivery of Tiarra Fain's child. Women Prisoners of D.C. v. District of Columbia, 93 F. 3d 910, 918, 1936 (D.C. Cir. 1996) recognized that the use of restraints on any women in labor, during delivery, or in recovery immediately after delivery violated the Eighth Amendment. The shackling of pregnant women in labor and delivery was also found to be a violation of the Eighth Amendment in Nelson v. Correctional Medical Services, 583 F. 3d 522, 533 (8th Cir. 2009); and in Brawley v. State of Washington, 712 F. Supp. 2d 1208, 1221 (W.D. Wash. 2010).

In Nelson, *supra*, the Court held that the Eighth Amendment violation was clearly established prior to September of 2003 (a relevant date there) citing Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Estelle establishes that interference with care causes unnecessary suffering establishes deliberate indifferences and a violation of the Eighth Amendment. Nelson, *supra* also holds that Courts may look to administrative regulations in effect to establish constitutional protections. Numerous states and the federal government have adopted regulations banning the practice employed on Ms. Fain in this case.

It is un-contradicted that Plaintiff suffered emotional harm from this method of delivery. Indeed, the publicity surrounding this case speaks of her upset and anger about what was done to Ms. Fain. Her medical records establish that when she went to Fluvanna Women's Correctional Center, she received psychiatric care there. The primary damage is the outrage, the anger, the frustration, the embarrassment that she suffered as a result of this weird method of delivery. Imagine telling your children or your grandchildren that you were shackled at the time of their birth.

The Defendants' defense to the deliberate indifference claim fails; the practice of Rappahannock Regional Jail restraining pregnant women is a clear violation of the Eighth Amendment as alleged by Ms. Fain, and supported by the facts she brings forward to support her claim.

## II. QUALIFIED IMMUNITY

The Defendant next argues that even if Officer Stone violated Ms. Fain's Eighth Amendment rights, they are entitled to qualified immunity, and others, because those rights were not established at the time. Presumably, this argument runs to all of the officers sued because they participated in the shackling program at Mary Washington Hospital or were supervisors responsible for implementing the program (Officers Reed and Smith should be released as they apparently did not participate directly in this situation, and that is true of Officer Patterson as well). This argument has been largely addressed above. The issue is: was there a violation of a known and clearly established constitutional right? If so, qualified immunity fails. The D.C. Court of Appeals, often regarded as a kind of super Appellate Court, as early as 1996 ruled that the restraining of women in labor and delivery or in recovery immediately after deliver was a constitutional violation of the Eighth Amendment, Women Prisoners of D.C. v. District of Columbia, 93 F. 3d 910 (D.C. Cir. 1996). That has been supported by the Nelson and Brawley opinions cited above; and by numerous

state regulations cited above. A constitutional right was violated here; and that right as early as 1996 has been determined to be well and clearly established, see <u>Women Prisoners of D.C.</u>, *supra*, and <u>Nelson</u>, *supra*. These officers are not entitled to qualified immunity.

The Defense cites no case holding to the contrary, that it is permissible to shackle women during labor and delivery. Defendants say that Rappahannock Regional Jail's restraint policy does not violate the Eighth Amendment. Each of the correctional officers charged with the care of Ms. Fain at Mary Washington Hospital testified to the policy, as did Mr. Higgs, the officer responsible for formulating the policy for the Rappahannock Regional Jail. That policy in 2010 was that an inmate was to be restrained throughout the procedure. Whether or not the inmate would be released, even for delivery, was not clearly defined by the policy; and shackling during delivery was within the policy (see Higgs Exhibit 4, in response to Ms. Fain's complaint that she was shackled during delivery; the jail did not deny it, rather simply said she was a prisoner; and Higgs deposition p. 31). Defendant Higgs admitted to the press in 2010 (Higgs Exhibit 5) that restraints would not be removed to compromise the ongoing safety of doctors, nurses and officers, etc. (Higgs deposition p. 42), and that an inmate might be restrained during delivery (Higgs deposition p. 42) see also (Giuffra deposition p. 9-12) see also (Stone deposition p. 18, restrained again immediately after delivery contrary to the holding in the <u>Women Prisoners of D.C.</u>, *supra*). The custom and practice has been testified to by all of the guards and by the Superintendent, Defendant Higgs. The policy in 2010 at most, calls for restraints to be released for active labor and delivery, which is not sufficient to meet the constitutional muster and even the release for labor and delivery, was very much up in the air in 2010 as can be seen by the various spins put on it by the guards testifying. The policy and procedure, as admitted by Defendant Higgs and by at least some of the officers, permitted inmates to be restrained through pregnancy labor and delivery. This policy and procedure of Rappahannock

Regional Jail is one that was approved by its Superintendant, practiced by the guards in violation of the Eighth Amendment.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff has made out all of the requirements for the intentional infliction of emotional harm, with the exception of number four (4). Plaintiff would agree that there is insufficient evidence under Virginia law to establish severe emotional distress within the meaning of that tort in Virginia.

### IV. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Again, Plaintiff admits that while Ms. Fain suffered severe emotional harm from this incident, which will last her a lifetime, she has not suffered any medically provable emotional distress required by Virginia standard for negligent infliction of emotional distress.

### V. IN LIGHT OF THE TESTIMONY OF MS. FAIN'S OBGYN, NO REASONABLE JURY COULD BELIEVE MS. FAIN'S TESTIMONY THAT SHE WAS SHACKLED DURING LABOR AND DELIVERY.

The very statement of this issue shows that a jury issue exists on that credibility matter. The facts of this case that have been put forth show, that none of the guards can recall unshackling Ms. Fain during her labor and delivery. Ms. Fain states unequivocally that she was shackled during labor and delivery, and puts forth a good, reasonable explanation of how it was that she was not unshackled at the time of delivery. She says the medical situation moved quickly, and the issue of unshackling Ms. Fain never came up. The guards seem to look to the pronouncement of active labor by the doctor as the trigger to unshackle, if unshackling occurs at all; and in this case, the

doctor unequivocally stated that Ms. Fain never went into labor at all (Uzochukwu deposition p. 35). So the trigger event under the policy of the Rappahannock Regional Jail never occurred.

Ms. Fain also made an immediate complaint of being shackled during delivery when she returned to the jail; and the jail's response at that time was not that she was not shackled, but that she was a prisoner and that explains why she was shackled (Higgs Exhibit 4).

While it is true that Dr. Uzochukwu states Ms. Fain was unshackled during delivery, the jury could find that the doctor is protecting herself and the hospital, and more likely just testifying as to what she always does or expects to be done in circumstances where she cannot really remember what occurred. There is clearly a jury issue here.

## CONCLUSION

In sum, the Plaintiff would agree to the dismissal of Correctional Officers Reed, Smith and Patterson, and to the state law claims. The Plaintiff has established an Eighth Amendment violation, which is ripe for trial.

i

Tiarra Fain

BY _____/s/_____
William G. Shields
VSB# 14200
The Shields Law Firm, PLLC
11512 Allecingie Parkway, Suite C
North Chesterfield, Virginia 23235
(804) 594-3966 Phone
(804) 594-3855 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on March 4th, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Alexander Francuzenko, Esq.
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road
Suite 200
Fairfax, Virginia 22030

/s/
William G. Shields, Esq.

---

[i]
1. Fed. Bureau of Prisons, No. 5538.05, Program Statement, Escorted trips (2008), available at http://www.bop.gov/policy/progstat/5538_005.pdf.

2. Cal. Penal. Code § 3423 (west 2009); An Act Concerning the Safe Treatment of Pregnant Persons in Custody, 2010 Colo. S.B. 193; 55 Ill. Comp. Stat. Ann. 5/3-15003.6 (West 2010); N.M. Stat. Ann. §33-1-4.2 (2010); N.Y. Correction Law § 611 (2010); An Act Amending Title 61 (Penal and Correctional Institutions) of the Pennsylvania Consolidated Statutes, 2009 Pa. Laws 45; An Act Relating to the Use of Restraints to Control the Movement of Pregnant Women and Female Children Confined in Certain Correctional Facilities in this State, 2009 Tex. Gen. Laws 1184; Vt. Stat. Ann. tit. 28, § 801a (2010); An Act Relating to the Use of Restraints on Pregnant Women or Youth, 2009 Wa. H.B. 2747; W.Va. Code § 25-1-16 (2010).

# Plaintiff's List of Exhibits

Excerpts from Joseph Higgs' deposition ...................................................................................A
Excerpts from Melissa Stone's deposition ................................................................................B
Excerpts from Vina Reed's deposition .....................................................................................C
Excerpts from Tina Schoolfield's deposition ...........................................................................D
Excerpts from Jennifer Giuffra's deposition.............................................................................E
Excerpts from Dr. Uzochukwu's deposition............................................................................. F
Excerpts from Tiarra Fain's deposition ...................................................................................G

Plaintiff's Expert, Carolyn Sufrin's statement..........................................................................H