**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| TIARRA FAIN, | : |
| Plaintiff, | : |
| v. | :     3:12-cv-00293 (JAG) |
| RAPPAHANNOCK REGIONAL JAIL, et al. | : |
| | : |
| Defendants. | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COME NOW the Defendants, Rappahannock Regional Jail Authority, Joseph Higgs, Officer Reed, Officer Schoolfield, Officer A. Smith, Officer Stone, Officer Jennifer Gluffra, and Officer Earl Lewis (hereinafter referred to collectively as "Defendants"), by and through undersigned counsel, Alexander Francuzenko, Esq., and the law firm of Cook Craig & Francuzenko, PLLC, and reply to the Plaintiff's Opposition to their Motion for Summary Judgment.

**ARGUMENT**

**A.**     **Ms. Fain's Material Facts and Disputed Facts**

Contrary to Fact 2, several guards stated that they specifically recalled Ms. Fain having been unrestrained:

1. Officer T. Schoolfield stated that when the officer guarded Ms. Fain at the hospital, she had one ankle and one wrist restraint and a full range of motion to pick up the baby, and she did not state any difficulties. (Exh. 1, RRJ-304.)

1

2. Officer Earl Lewis stated that when he guarded Ms. Fain at the hospital post-delivery, she was not restrained to the bed, only her ankles to each other. (Exh. 2, RRJ-306-07.)

Contrary to Fact 22, Officer Giuffra stated that she would remove restraints during active labor *or* if they interfered with a medical procedure. (Exh. 3, Giuffra Depo. 12:3-5.) Fact 37—that Ms. Fain's doctor usually saw inmates restrained post-partum—actually supports the Defendants' reasonable belief that it was not unconstitutional to do so. That fact demonstrates that the practice was normal, not exceptionally cruel, a cause for concern, or contrary to the orders of the other physicians at the hospital. Contrary to Fact 38, nothing—not even the "tenor" of the testimony—on page 39 of Dr. Uzochukwu's deposition transcript contradicts her testimony that she specifically remembers that Ms. Fain was not restrained during delivery. (Exh. 4, Uzochukwu Depo. 9-11, 17-18, 39-40.)[1] Ms. Fain characterizes as "complications" the facts that her labor was induced and that a nuchal cord developed. (Pl.'s Opp'n 8 ¶ 2.) Ms. Fain uses the term "complication" as a layperson would, but what matters is Dr. Uzochukwu's medical knowledge applied to Ms. Fain's particular case. Dr. Uzochukwu's deposition testimony and medical records all reveal that this was an uncomplicated delivery from a medical perspective. (Exh. 4, Uzochukwu Depo. 8-9 and Exhibits 1, 2 and 3 to Dr. Uzochukwu's Deposition Report.) Ms. Fain has nothing but her own conclusory words to "disagree" with Dr. Uzochukwu's assessment.

**B.     Ms. Fain Cites No Authority for the Proposition That the Eighth Amendment Required the Defendants to Leave Her Unrestrained from the Time She Left the Jail until the Time She Returned**

---

[1] Ms. Fain alleges in her Amended Complaint, and in her sworn deposition testimony, that she was restrained in both arms, and left ankle which was in the stirrups during Dr. Uzochukwu's delivery of her baby.

Ms. Fain makes this claim on the first page of her opposition. The other circuits' cases she cites (Pl.'s Opp'n 9) hold that shackling during labor is an Eighth Amendment violation but are silent as to shackling before or after. *See Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 533 (8th Cir. 2009) (noting that defendants had admitted they knew of health risk to mother and child); *Women Prisoners of D.C. Dep't of Corrs. v. District of Columbia*, 93 F.3d 910, App. A ¶ 35 (D.C. Cir. 1996) (permitting leg-shackling of pregnant inmates during transport); *Brawley v. Washington*, 712 F.Supp.2d 1208, 1221 (E.D. Wash. 2010) (relying heavily on fact that defendants' own policy forbid shackling of inmate during labor; issued several weeks after Ms. Fain's delivery); *Zaborowski v. Dort*, No. 08 C 6946, 2011 WL 6660999, at *5 (N.D. Ill. 2011) (noting that sheriff's alleged unwritten policy violated both written policy and Illinois statute; issued well after Ms. Fain's delivery). Even Ms. Fain's own expert report fails to establish any danger to a pregnant, shackled inmate except during labor. (Pl.'s Designation of Experts 5-6.) Ms. Fain may argue that the practice violates the Eighth Amendment, but she has no support, either legal or factual, for the claim, and the Defendants would have had absolutely no way of guessing that this legal theory governed their behavior in the Fourth Circuit in 2010.

Her expert testimony on the shackling of pregnant inmates identifies risks, some of which Ms. Fain admits did not occur in her case (Pl.'s Opp'n 10), and some of which occurred but did not cause her any damage. The Defendants' expert report states that to the extent the medical records reflect any restraint, the restraint posed no risk at all to Ms. Fain's health and her delivery was straightforward, uncomplicated, and not at all as Ms. Fain described it. (Exh. 5, Defs.' Expert Witness Disclosure 7.) The risks to Ms. Fain are pure speculation, and they never resulted in injury to her or her child.

## C.     Other Circuits' Opinions Are Irrelevant to the Qualified Immunity Analysis

Ms. Fain does not cite any U.S. Supreme Court, Fourth Circuit, or Virginia Supreme Court case for the proposition that she suffered an Eighth Amendment violation. *See Wilson v. Kittoe*, 337 F.3d 392, 402-03 (4th Cir. 2003) (citations omitted) (holding that court deciding whether right was clearly established considers only U.S. Supreme Court, applicable circuit court, and state supreme court opinions). Sound policy supports the *Wilson* rule: without it, law enforcement officers would have to be constitutional scholars as well, keeping abreast of developments in every circuit and state court and trying to guess the number of decisions required before a right is clearly established. Ms. Fain cites no authority for the idea that the D.C. Court of Appeals is a "super" appellate court (Pl.'s Opp'n 12) such that its decisions are more important in the Eastern District of Virginia qualified-immunity analysis than those of the Fourth Circuit. Ms. Fain would likewise import the Eighth Circuit's *Nelson* analysis into the Fourth Circuit. The Fourth Circuit might one day adopt *Nelson* or the D.C. Circuit's analysis in their entirety or reject them outright, but the Defendants are in no position to guess whether that will happen. Qualified immunity addresses this type of situation and resolves gray areas, to the extent that this case is one, in favor of the Defendants. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

## D.     Policy Changes Following Ms. Fain's Delivery Are Irrelevant to the Qualified Immunity Analysis and Inadmissible

A party may oppose a putative material fact by establishing that the fact would not be admissible in evidence. Fed. R. Civ. P. 56(c)(1)(B). Subsequent remedial measures are generally inadmissible to prove culpable conduct. Fed. R. Evid. 407; *see Albrecht v. Baltimore & Ohio Ry. Co.*, 808 F.2d 329, 331-32 (4th Cir. 1987) (holding that admission of subsequent

remedial measures warranted new trial where defendant had stipulated to feasibility). Ms. Fain raises the fact that the policy regarding shackling pregnant inmates changed after her delivery. (Pl.'s Material Facts 4, 10.) These policy changes are inadmissible. The Defendants do not dispute that a different policy was feasible or beyond their control. *See id.* R. 407. Such policy changes would impermissibly suggest to the jury that the Defendants engaged in culpable conduct by promulgating or following the policy in effect during Ms. Fain's delivery.

The issue's legislative history reveals that not even the Virginia General Assembly found a problem with the policy. During the 2012 session, House Delegates Hope, LeMunyon, and Webert introduced a bill which would have prohibited restraint, from the moment of departure from the jail to return, of pregnant inmates absent a compelling reason for such restraints. H.R. 836, 2012 Gen. Assem. (Va. 2012). The Militia, Police, and Public Safety Subcommittee #2 killed the bill on February 9, 2012. Not until November 2012 did the Virginia Board of Corrections announce that it intended to implement regulations regarding the shackling of pregnant inmates.[2] Ms. Fain expects the Defendants to follow the law of other circuits, a law which the Virginia General Assembly expressly refused to enact, and a regulation which the Board of Corrections took more than two years to implement following Ms. Fain's delivery. The fact that the Commonwealth's government could not agree on the issue strongly suggests that a reasonable officer could have believed that it was constitutional to restrain Ms. Fain despite her condition.

Finally, assuming that these judicial, legislative, and administrative developments show an evolving standard of decency, the Defendants need qualified immunity, at least in the first

---

[2] Errin Haines, *Virginia weighs ban on some restraints for pregnant inmates*, Washington Post, November 25, 2012, *available at*
http://articles.washingtonpost.com/2012-11-25/local/35509552_1_pregnant-inmates-female-inmate-regional-jails.

case that recognizes the standard (if this is that case). To hold otherwise would require them, in order to detect the standard as it emerges, to follow such diverse sources as opinion polls, town-hall meetings, legislative debates, and dissenting opinions and speeches by Supreme Court justices in order to guess what the next evolved standard might be. That evolution may be the mark of a maturing society, but this Court should not impose liability on the Defendants for failing to detect that social shift. They are not sociologists, philosophers, or politicians (at least by vocation). They are law-enforcement professionals tasked with maintaining control over arrestees and criminals, even in public hospitals without the usual protections they have in the jail context—walls, fences, and many other officers. This Court may circumscribe their behavior with bright lines, but it cannot order them to pay Ms. Fain for their guessing incorrectly about whether and how to restrain her. *See Maciariello*, 973 F.2d at 298.

## CONCLUSION

This Court should award the Defendants judgment as a matter of law.

The Defendants consent to the dismissal of Defendant Reed (Pl.'s Opp'n 4) and Ms. Fain's intentional and negligent infliction of emotional distress claims (Pl.'s Opp'n 14). The parties will submit a consent order to that effect.

                                             Respectfully submitted,

                                             _____/s/_____
                                             Alexander Francuzenko, VSB 36510
                                             Attorney for Defendants
                                             Cook Craig & Francuzenko, PLLC
                                             3050 Chain Bridge Road, Suite 200
                                             Fairfax, VA 22030
                                             Phone (703) 865-7480
                                             Fax (703) 434-3510
                                             alex@cookcraig.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2013, I served a copy of the foregoing Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment via ECF transmission to:

William G. Shields, Esq.
Tara D'Lutz, Esq.
The Shields Law Firm, PLLC
11512 Allecingie Parkway, Ste. C
Richmond, VA 23235

_____/s/_____
Alexander Francuzenko, VSB 36510
Attorney for Defendants
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
alex@cookcraig.com