**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

TIARRA FAIN,                                     :

        Plaintiff                               :

v.                                               :          CASE NO.  3:12-CV-293

RAPPAHANNOCK REGIONAL JAIL,   :
ET AL.,
                                                 :

        Defendants

### DEFENDANTS' EXPERT WITNESS DISCLOSURE

COME NOW the Defendants, Rappahannock Regional Jail Authority, Superintendent Joseph Higgs, Officer Melissa Stone, Officer Tina Schoolfield, Officer Reed, Officer Earl Lewis, Officer A. Smith, and Officer Jennifer Gluffra (hereinafter referred to as collectively as 'Defendants'), by and through their counsel, Alexander Francuzenko, Esq., and the law firm of Cook Craig & Francuzenko, PLLC, and file this Expert Witness Disclosure pursuant to Rule 26 of the Federal Rules of Civil Procedure.

A.    <u>Specially Retained Experts</u>

The Defendants will present the following expert witness to testify pursuant to testify pursuant to the Federal Rules of Civil Procedure, Rule 26(a)(2)(b):

1.    Nathaniel R. Evans, II, MD.  The information and reports required pursuant to Rule 26(a)(2)(b) are incorporated by reference herein, and are attached to this Disclosure.

B.    Defendants reserve the right to call all witnesses listed by the Plaintiff, including all of Plaintiffs treating physicians.  In addition to the specifically retained experts by the

1

**EXHIBIT 5**

Defendants, the Defendants also reserve the right to call the following treating physician in support of the defense at trial:

> 1. Dr. Chizoba Uzochukwu
>    Central Virginia OB-GYN Group
>    1011 Care Way
>    Fredericksburg, VA  22401

C.   Defendants reserve the right to call Plaintiffs specially retained experts.

D.   Defendants reserve the right to call any sur-rebuttal experts permitted by the Court.

Alexander Francuzenko
VA Bar #36510
Attorney for Defendants
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA  22030
(703) 865-7480 (office)
(703) 434-3510 (fax)
alex@cookcraig.com

**EXHIBIT 5**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a copy of the foregoing Defendants' Expert Witness Disclosure via email and first class mail, postage prepaid, this the 15th of January, 2013 to:

> William G. Shields, Esq.
> The Shields Law Firm, PLLC
> 11503 Allecingie Parkway
> Richmond, VA  23235
> Shieldslipp.wgs@comcast.net
> *Counsel for Plaintiff*

Alexander Francuzenko
VA Bar #36510
Attorney for Defendants
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA  22030
(703) 865-7480 (office)
(703) 434-3510 (fax)
alex@cookcraig.com

**EXHIBIT 5**

**Nathaniel R. Evans, II, M.D., FACEP**
**27 Emery Way**
**Delanco, New Jersey  08075**

January 14, 2013

Lee B. Warren, Esq.
Cook, Craig & Francuzenko, PLLC
3050 Chain Bridge Road
Suite 200
Fairview, VA 22030

Dear Mr. Warren,

At your kind request, I have reviewed the following in reference to the case of Tiarra Fain, plaintiff, versus Rappahannock Regional Jail Authority, et al.

1. The United States District Court summons.
2. Plaintiff's complaint and statement of jurisdiction.
3. Plaintiff's amended complaint and statement of jurisdiction.
4. Inmate request form dated 6 August 2010.
5. Plaintiff's designation of experts.
6. Statement concerning dangers of shackling pregnant women.
7. Plaintiff's experts' curriculum vitae.
8. Tiarra Fain's medical record from Mary Washington Hospital.
9. Multiple jail incident reports in reference to inmate Tiarra Fain.
10. Medical records from Tiarra Fain's OB/GYN physician.

My review of the medical record reveals that the majority of statements listed as "facts" in plaintiff's complaint and amended complaint are untruths, misrepresentations or exaggerations.

According to "facts" 13 and 14 in Plaintiff's "Statement of Facts" in Plaintiff's Amended Complaint: "On or about February 25, 2010, plaintiff was convicted, in the Circuit Court of Stafford County, Virginia of a nonviolent offense of forgery and providing false information to a police officer.  Plaintiff was transferred directly to RRJ.  At the time she was seven (7) months pregnant."

1

**EXHIBIT 5**

Medical records reveal that on March 11, 2010, Tiarra Fain was transported to Mary Washington Hospital for an obstetrical assessment. She was taken to Mary Washington Hospital with the complaint of decreased fetal movement. An obstetrical specialist examined her, prescribed medication, ordered certain tests for Tiarra Fain to undergo and instructed that she return on one week.

On March 18, 2010, Tiarra Fain was transported (by Rappahannock Regional Jail) to the obstetrical service. The obstetrician conducted an evaluation and noted that on that date, Ms. Fain had a cervical examination, complete blood count and an RPR test. She was advised to return in one week. The obstetrician noted that, "Patient is not on bed rest. She may ambulate without restrictions." Tiarra Fain was seen in follow-up one week later, on March 25, 2010. The obstetrician's note from that evaluation reflects no evidence of any abnormalities and Ms. Fain was asked to return in one week. On April 1, 2010, Tiarra Fain was transported (by Rappahannock Regional Jail) to the Obstetrical Center in Stafford, Virginia. The obstetrician noted "Good fetal movements, occasional contractions, cervical check done, patient is not high risk". One week later, on April 8, 2010, Tiarra Fain was transported (by Rappahannock Regional Jail) to the Obstetrical Center in Stafford, Virginia and evaluated by obstetrician who noted, "Cervical check done." Obstetrician further noted "Follow-up in one week. Good fetal movement". The medical record reveals that on April 18, 2010, Tiarra Fain was admitted to Mary Washington Healthcare at 06:30 a.m. for induction of labor. Medical record shows that Tiarra Fain was administered a series of standard medications for induction of labor. The physician's order sheet reflects that (other than standard order medications to induce labor) Tiarra Fain was given only Tylenol for pain. There is no mention whatever in the nurses notes concerning Tiarra Fain being in "extreme or severe pain." I noted no evidence that she was experiencing any pain. At 02:55 p.m. on April 18, anesthesiologist placed an epidural catheter and administered an anesthetic just prior to Tiarra Fain's delivery of a normal infant on April 18th, 2010. Anesthesiologist noted, "Patient says she feels more comfortable." Anesthesia notes document the anesthesia start time as of 02:55 p.m., the end time was 03:25 p.m.

Contrary to plaintiff's claim of having had several asthma attacks during the April 2010 hospitalization, plaintiff had no asthma attack during that hospitalization. The only mention of asthma during the hospitalization of April 2010 was on the anesthesia health questionnaire. One of plaintiff's responses to a question on the questionnaire was: "asthma – last used inhaler four months ago". There was no mention of asthma in the physician's notes, no mention of asthma in the nursing notes and no asthma medications were administered during the April 2010 hospitalization.

A physician's progress note dated April 18, 2010 at 08:30 p.m. stated that Tiarra Fain's delivery was "uncomplicated." A medical progress note dated April 19, 2010 at 09:50 a.m. states that Tiarra Fain is "without complaints." The physician's progress note of April 20, 2010 at 02:20 p.m. states that Tiarra Fain had "no complaints."

2

**EXHIBIT 5**

The facts as stated in the medical records refute many of plaintiff's statements in her "Statement of Facts" as listed in Plaintiff's amended complaint. Tiarra Fain's amended complaint (number 15) stated her April 2010 pregnancy was a "high-risk pregnancy". The statement is directly refuted by the April 1st, 2010 statement of the obstetrician (that hers was not a high risk pregnancy).

Plaintiff's statement in paragraph 24 of her Amended Complaint that "Plaintiff's umbilical cord was wrapped around the baby's neck" is not supported by any statement in the medical record. Specifically, the delivery was described in the medical record as uncomplicated.

Paragraph 26 of Plaintiff's Amended Complaint states that Plaintiff experienced "excruciating pain" during hospitalization. The statement is not supported by any statement in the medical record. Tiarra Fain's hospital medical record of April 19th, 2010 states she had "no complaints".

Statements by plaintiff that officers refused to remove shackles when asked (by medical personnel) to do so are not supported by any notes in the medical record. Plaintiff's statement is refuted by statements made by the obstetrician who delivered her baby. The obstetrician, Dr. Chizoba Uzochukwu, stated Tiarra Fain was not shackled during the delivery.

The Amended Complaint statement (number 27) that Plaintiff was unable to breastfeed properly due to the restraints, and her statement that the restraints were impairing her capacity to handle her infant are not supported by any statement in the medical record. Because successful feeding is so important the health of newborns, nurses in newborn nurseries carefully monitor for and document any feeding difficulties. Nurses did not document that Plaintiff had any difficulty breastfeeding her infant.

Plaintiff's complaint that there is a male officer present during her attempt to breastfeed is not supported by any statement in the medical record. It is my opinion that a reasonable breastfeeding mother would inform nurses if an officer's presence was compromising her breastfeeding experience. Nurses notes do not make reference to any such issue.

Having noted the degree of misrepresentation in the plaintiff's case as it relates to the details of her medical care, I cannot, but question the accuracy of her claims with respect to the details of her restraint during transport and during the April 2010 hospitalization. Tiarra Fain was transported (by the Rappahannock Regional Jail) to the obstetrical doctor weekly for obstetrical care. Rappahannock Regional Jail was diligent in transporting her to the obstetrician so that she would consistently get high quality obstetrical care.

3

**EXHIBIT 5**

Tiarra Fain has made complaints concerning her restraint during transport to the hospital and during her hospitalization for delivery of infant in April of 2010. In a written statement, correctional officer, Melissa Stone, wrote that during the transport to the hospital for delivery on April 18, 2010, Tiarra Fain was restrained with both legs free and one hand restrained en route to the hospital. Officer Stone further stated that after the birth of her infant, Tiarra Fain was restrained with one arm restrained to the hospital bed and one leg restrained to the hospital bed. Officer Schoolfield also agreed in her statement that Tiarra Fain had been restrained in bed with one arm and one leg attached to the bed.

In a confidential memorandum, Sergeant Theresa Simpson wrote that on March 1, 2012, she spoke with Dr. Chizoba Uzochukwu from Central Virginia OB/GYN. The confidential memorandum contains the following statement:

> "Dr. Uzochukwu explained her patients have never been in restraints during the "course of delivery". She said her patients are "mobile" for delivery. Dr. Uzochukwu also explained that when she enters the delivery room, the patient does not have restraints applied. She further explained the restraints remained off until after she leaves the delivery room after childbirth. In addition, Dr. Uzochukwu said Mrs. Fain's claim of a high-risk pregnancy and the cord being wrapped around the newborn's neck are "exaggerated". She said her (Fain's) delivery in respect to restraints was no different from the other deliveries of those she does with all patients from this facility (RRJ)."

Review and Summary

After having undergone a thorough obstetrical evaluation for complaint of decreased fetal movement, on March 11, 2010, Plaintiff was returned to obstetrical care weekly by the staff of Rappahannock Regional Jail. She underwent weekly obstetrical evaluations and was specifically noted to not have a high-risk pregnancy. She was hospitalized for delivery of infant on April 18, 2010. She had an uncomplicated delivery of a healthy infant on April 18, 2010. There is no evidence from the medical record that restraints interfered in any way with Plaintiff's medical care or her care of her infant. There are no nurses' nor physician's notes to suggest any problem with Plaintiff's restraints nor is there any evidence of non-cooperation by Rappahannock Regional Jail correctional staff. Further, the medical record documents that the Tiarra Fain did not complain of pain and was not treated with pain medicine other than Tylenol. As I have noted, Plaintiff's Statement of Facts is comprised of multiple exaggerations and misrepresentations. Neither metal shackles nor abdominal shackles were used on Tiarra Fain during her April 18th, 2010 transport to hospital, nor during her April hospitalization nor during transport back to Rappahannock Regional Jail. More comfortable leather restraints were used on one or two extremities. There was no evidence to support the claimant's allegation that one of her arms was restrained across her body to the opposite side. She was not restrained during the delivery of her infant.

EXHIBIT 5

Having worked as an emergency physician for approximately 10 years and having worked as chief physician of a two-hospital emergency department, I have treated many inmates who were transported to our emergency department and who received emergency treatment while in restraints. I have treated restrained or shackled inmates with cardiac emergencies, respiratory emergencies and other life-threatening conditions. I have never found restraints to be an obstacle to my successful and effective treatment of patients. I have never encountered a situation in which correctional officers were uncooperative with respect to the use of restraints. Further, in the case of Tiarra Fain, there was no documentation by nurses or physicians that officers were unresponsive or restraints were problematic.

Doctors are responsible for the health of patients and bad outcomes reflect adversely on medical care. Any reasonable doctor who is prevented from providing care by restraints or by a correctional staff member would document that problem in the medical record. Documentation of problematic issues threatening to compromise the quality of care is expected and is routinely done by physicians and nurses. The fact that there is no documentation of any such problem in the case of Tiarra Fain makes it very clear that neither doctors nor nurses encountered any problems with respect to restraint of Tiara Fain. The absence of documentation of difficulty with restraints or corrections officers undermines Tiara Fain's claim that such difficulties existed.

Rappahannock Regional Jail attentively met the needs of Tiara Fain by making certain that she received regular obstetrical care on a weekly basis during the weeks prior to her delivery. The medical record reflects that every request and order issued by the obstetrical specialist was appropriately followed during the period of Ms. Fain's incarceration prior to delivery of her infant on April 18th, 2010.

It is my opinion, to a reasonable degree of medical certainty, that the medical and correctional staff at Rappahannock Regional Jail performed appropriately and attentively in addressing the needs of Tiarra Fain. Plaintiff's list of complaints represents a self-serving misrepresentation of the details of her condition during her April 18th to April 20th, 2010 hospitalization. The medical record reveals that there was absolutely no evidence of neglect or indifference towards the needs of Tiarra Fain. The restraining actions conducted by the Rappahanock Regional Jail Authority's correction officers in restraining Tiarra Fain during March and April of 2010 were appropriate and not excessive. Contrary to Plaintiff's claim, the obstetrician who delivered her infant has stated that Plaintiff was not restrained during delivery of her infant. It is my medical opinion to a reasonable degree of medical certainty that the application of restraints as was done by a correctional staff of the Rappahannock Regional Jail was not only appropriate, but also necessary to ensure that the incarcerated plaintiff could not possibly take a flight action that would put herself and others (including her infant) at risk of harm.

EXHIBIT 5

In preparing this report, I have reviewed all records listed on page one of this report. I have also conducted research into relevant medical literature.

My fee for expert medical services is $385 per hour. I anticipate testifying in court in reference to this case. My fee for court testimony is $3500.

I am a graduate of the Johns Hopkins School of Medicine. I am a physician licensed to practice medicine in the state of New Jersey. I am certified by The American Board of Internal Medicine, The American Board of Emergency Medicine and The American Board of Preventive Medicine.

During the past four years, I have testified as a medical expert in the following case:
IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT
OF HINDS COUNTY, MISSISSIPPI

JOHN HODGE, INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF POLLIE HODGE,
AND ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF POLLIE HODGE, DECEASEDPLAINTIFFS

VS.CAUSE NO. 251-10-189-CIV

ST.DOMINIC HOSPITAL, STA-HOME HEALTH
AGENCY OF JACKSON, INC.; REGENCY
HOSPITAL OF JACKSON, LLC, AND JOHN
DOES 1-5, UNKNOWN DEFENDANTSDEFENDANTS

Sincerely,

Nathaniel R. Evans, II, M.D., FACEP

6

**EXHIBIT 5**

### *CURRICULUM VITAE*
**Nathaniel R. Evans II, M.D., F.A.C.E.P.**
**27 Emery Way**
**Delanco, New Jersey  08075**

### EDUCATION
September 1964 – June 1968
Howard University
Washington, D.C.
B.S. June 1968

June 1968 – May 1969
Post-baccalaureate Fellow
Haverford College
Haverford, Pennsylvania

September 1969 – May 1973
Johns Hopkins University
School of Medicine
Baltimore, Maryland
M.D. May 1973

### POSTGRADUATE
July 1, 1973 – June 30, 1974
Internship in Internal Medicine
Shands Teaching Hospital
J. Hillis Miller Health Center
University of Florida
Gainesville, Florida

July 1, 1974 – June 30, 1976
Residency in Internal Medicine
Shands Teaching Hospital
J. Hillis Miller Health Center
Gainesville, Florida

### LICENSURE (past and current)
Florida License No. 25050, 02/20/1975
Indiana License No. 27249, 10/21/1976
New Jersey License No. 35257, 08/25/1978
North Carolina License No. 22233, 12/06/1977
Pennsylvania License No. 20306-E, 11/23/1977

### CERTIFICATIONS

Diplomate of the American Board of Internal Medicine, 1978
Diplomate of the American Board of Emergency Medicine, 1983
Basic Life Support Instructor, 1985, 2002
Certified Correctional Health Care Provider, 1991, 2004, 2008
Recertified, American Board of Emergency Medicine, 1993, 2003
Certified, American Society of Addiction Medicine, 2002
Certified, American Board of Preventive Medicine, Occupational Medicine, 2006

**EXHIBIT 5**

## PROFESSIONAL EXPERIENCE

Chief of Medicine
Hawley Army Hospital
Indianapolis, Indiana
1976 – 1977

Physician – Internist
Walson Army Hospital
Fort Dix, New Jersey
1977 – 1979

Emergency Physician
Rancocas Valley Hospital
Willingboro, New Jersey
January 1979 – June 1979

Director, Emergency Department
Riverside Division
Zurbrugg Memorial Hospital
Hospital Plaza
Riverside, New Jersey
March 1983 – August 1985

Emergency Physician
Memorial hospital of
Burlington County
175 Madison Avenue
Mt. Holly, New Jersey
September 1985 – August 1986

Medical Director
Burlington County Correctional Facilities
54 Grant Street
Mt. Holly, New Jersey
August 1987 – December 2007

Occupational Medicine Physician
Virtua at Work
895 Rancocas Road
Westampton, New Jersey
June 2010 -- present

Emergency Physician
Midwest Medical Management, Inc.
528 Turtle Creed North Drive
Indianapolis, Indiana
October 1976 – July 1978

Physician Management, Ltd.
5100 Loughboro Road, NW
Washington, D.C.
1978 - 1979

Director, Emergency Department
Rancocas Valley Hospital (RVH-ZMH)
Willingboro, New Jersey
June 1979 – August 1985

Emergency Physician
Our Lady of Lourdes Medical Center
1600 Haddon Avenue
Camden, New Jersey
September 1985 – August 1990

President and Medical Director
Burlington Medical Center
640 Beverly-Rancocas Road
Willingboro, New Jersey
August 1986 – May 2010

Medical Coordinator
New Jersey Juvenile Justice Commission
Trenton, New Jersey
January 2004 – June 2006

## MEMBERSHIPS (past and present)
American College of Occupational and Environmental Medicine
American Association of Medical Review Officers
Fellow of the American College of Emergency Physicians
American Medical Association
Medical Society of New Jersey
Physicians for Automotive Safety
Affiliate Faculty for Advanced Cardiac Life Support
American Heart Association New Jersey Affiliate
Drug & Alcohol Testing Industry Association

**EXHIBIT 5**