IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

TIARRA FAIN,

Plaintiff,

v.

Civil Case No. 3:12cv293-JAG

RAPPAHANNOCK REGIONAL JAIL, *et al.*
Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on the defendants' Motion for Summary Judgment. (Dk. No. 44.) The plaintiff Tiarra Fain ("Fain") gave birth to her child while incarcerated and in the custody of the Rappahannock Regional Jail. She says that correctional officers restrained her on the way to the hospital, during labor and delivery, and through the post-partum period until she returned to the jail the following day.

Fain asserts a claim under 42 U.S.C. § 1983, alleging a violation of her Eighth Amendment rights.[1] Fain brings this claim against the following defendants: (1) Rappahannock Regional Jail Authority (the "Jail"), (2) Superintendent Joseph Higgs,[2] (3) Officer Stone, (4) Officer Schoolfield, and (5) Officer Lewis.[3] Viewing the facts in the light most favorable to Fain, qualified immunity bars her claims against all of the defendants in their individual capacities because a reasonable officer acting in the officers' positions would not have known

[1] Fain's Amended Complaint contained state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress. Fain stated in her opposition brief that she no longer pursues these two claims. Accordingly, the Court dismisses the state law claims with prejudice.

[2] Fain sued Superintendent Joseph Higgs in both his official and individual capacity. A suit against a public officer in his official capacity actually asserts a claim against the entity for which the officer works. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). The Court, therefore, will not discuss the official capacity claim against Higgs.

[3] Fain also sued Officers Reed, Smith, and Patterson. After discovery, she abandoned her claims against those three officers, and the Court will dismiss the case against them with prejudice.

that restraining Fain on the way to the hospital, during labor and delivery, and during the post-partum period violated her Eighth Amendment rights. Furthermore, the plaintiff has not come forward with any evidence that Superintendent Higgs showed a deliberate indifference to Fain's medical condition, and Higgs cannot be held liable on a supervisory liability theory. Finally, the Jail's Escorted Trips Policy did not show a deliberate indifference to the well-being of inmates and thus did not violate the Eighth Amendment. Thus, the Court GRANTS the defendants' motion for summary judgment.

## I. Facts

The Circuit Court of Stafford County Virginia convicted Fain of forgery and providing false information to a police officer. At the time of her conviction, Fain was seven months pregnant. After her trial, Fain was held in the Rappahannock Regional Jail, awaiting transfer to the Virginia Department of Corrections.

On April 18, 2010, Fain began to experience contractions, and the officers at the Jail transferred her to Mary Washington Hospital. At the time, the Rappahannock Regional Jail Authority's Escorted Trips Policy provided that:

> When the need arises to transport an inmate to a non-secure hospital, an armed certified Jail Officer directly supervises the inmate. If a Jail vehicle transports the inmate, full restraints are applied when physically permissible. Restraints may be temporarily removed at the request of the emergency room medical staff for the purposes of tests, x-ray, or any other hospital protocol. Restraints are to be reapplied immediately following any procedure. Any inmate assigned to a room in a non-secure hospital is under the direct supervision of an armed certified Jail Officer. Leather restraints are to be applied, at a minimum, to the wrist and ankle and to the bed rail. Restraints are not to be removed unless requested by medical staff for the purpose of any medical procedure or to permit the inmate to use the restroom. Under both circumstances, the inmate is to be closely supervised by the Jail Officer and restraints applied immediately thereafter.

Rappahannock Regional Jail Authority, Escorted Trips Policy, Ex. 4, Defs.' Mot. Summ. J., Dk. No. 45-6.

The parties agree as to many of the relevant facts. Officer Stone accompanied Fain to the hospital. During the trip to the hospital, Officer Stone restrained Fain by keeping her handcuffed and shackled at the legs. After arriving at the hospital, Officer Stone escorted Fain through the hospital, still handcuffed and shackled at the legs. Once in the hospital room, Officer Stone restrained Fain's arms by tying leather straps to the handcuffs and then tying the straps to the bed. Officer Stone also restrained Fain's left leg to the bed. Fain's obstetrician came into the room around 8 a.m. and told the guard on duty, Officer Stone, that she did not want Fain restrained during labor and delivery. Still shackled to the bed, Fain went into labor later that morning.

At this point, the parties' versions of the facts diverge. According to Fain, during the rest of her labor and the delivery, she remained shackled in some form by the officers. According to the defendants, the officers followed the Jail's Policy and kept Fain restrained until the medical personnel requested that the officer remove the restraints. The defendants' version is backed up by, among other things, the testimony of the obstetrician who conducted the delivery and the contemporaneous medical records. Because of the posture of the case—consideration of the defendants' motion for summary judgment—the Court must accept the plaintiff's version, far-fetched as it is.

The parties' versions of the facts converge once again post-delivery. Fain delivered her son at 7:47 p.m. Fain remained shackled in some form at all times after delivery until Fain returned to the jail.

## II. Standard of Review

A court may appropriately grant summary judgment when the movant establishes that no genuine dispute of any material fact exists. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). After an adequate period for discovery, Rule 56(c) mandates a

grant of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The Court resolves all genuine factual disputes and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). The non-movant may not rest on claims within its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks and emphasis omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

As has occurred in this case, parties frequently raise factual disputes when challenging motions for summary judgment. A court can decide a summary judgment motion, however, even when factual disputes exist as long as the court views the facts in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Brown v. Gilmore*, 278 F.3d 362 n.2 (4th Cir. 2002). This rule applies in cases involving qualified immunity, as it does in any other summary judgment context. *Scott,* 550 U.S. at 378; *Brown*, 278 F.3d at 362 n.2.

Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). Ultimately, the relevant inquiry in a summary judgment analysis consists of "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

In this case, the alleged uncertainty—if and when the officers removed Fain's restraints—does not give rise to a genuine dispute over a material fact. The Court does not need to resolve the factual dispute to determine whether qualified immunity cloaks the officers. *See Jackson v. Long*, 102 F.3d 722, 727 (4th Cir. 1996). Even assuming that the officers did in fact restrain Fain in some fashion during the entire labor and delivery, qualified immunity still bars the claim.

## III. Discussion

### *A. Eighth Amendment Law*

The Eighth Amendment prohibits cruel and unusual punishment. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). "[I]n order to establish that she has been subjected to cruel and unusual punishment, a prisoner must prove (1) that the deprivation of a basic human need was *objectively* sufficiently serious, and (2) that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (alterations and emphasis in original) (internal citation omitted). An inmate can only satisfy the objective component by showing "a 'serious or significant physical or emotional injury resulting from the challenged conditions' or a substantial risk thereof." *Id.* (quoting *De'lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)). To satisfy the subjective element, the inmate must make a showing of deliberate indifference by the prison officials. *Id.* Deliberate indifference requires a showing that "a prison official actually kn[e]w of and disregard[ed] an objectively serious condition, medical need, or risk of harm. *Farmer*, 511 U.S. at 837.

*B. Principles of Qualified Immunity*

Qualified immunity protects government officials from liability in § 1983 actions arising from the performance of discretionary actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It applies so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As the Fourth Circuit has said, qualified immunity exists so that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Qualified immunity "gives ample room for mistaken judgments." *Malley*, 475 U.S. at 341.

Analyzing a qualified immunity claim entails two steps. A court has flexibility in the order in which it must perform this analysis. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In the first step, a court must decide "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003). This includes an analysis, based on the evidence, of the specific right allegedly violated, and a conclusion that such a right exists in the particular circumstances of the case. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

Second, a court must determine whether, at the time of the violation, a clearly established right existed such that a reasonable officer in the defendant's position would know that his actions would violate that right. *Simmons v. Poe*, 47 F.3d 1370, 1385 (4th Cir. 1995).

When a Court finds that a clearly established right was not established at the time of the conduct, the Court need not undertake the academic task of determining whether the right exists and whether the defendants violated that right. *Pearson*, 555 U.S. at 236. "[J]udges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*; *see Walker v. Prince George's Cnty.*, 575 F.3d 426, 429 (4th Cir. 2009).

The Fourth Circuit has held that to determine "whether a right was clearly established at the time of the claimed violation courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals and the highest court of the state in which the case arose." *Wilson v. Kittoe*, 337 F.3d 392, 402–03 (4th Cir. 2003) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999)) (alteration in original) (internal citations omitted). "[I]f a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense." *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir. 1998) *cert. granted, judgment vacated on other grounds,* 526 U.S. 1142 (1999).

Notably, however, the nonexistence of a case holding the defendant's identical conduct unlawful does not prevent the denial of qualified immunity. *See id.* at 708. At the time of the officer's actions, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998) *aff'd*, 526 U.S. 603 (1999).

"The difficult part of this inquiry is identifying the level of generality at which the constitutional right must be clearly established." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011). At the time of the officer's actions, the constitutional right allegedly violated must be clearly

defined in a concrete factual situation such that its contours are clear, unmistakable, and applicable to the precise conduct at issue. *See Anderson*, 483 U.S. at 640. The Court need not focus upon the right at an abstract level, but at the level of the specific conduct being challenged. *Simmons*, 47 F. 3d at 1385. Although the analysis focuses on objective facts, the immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question. *Rowland v. Perry*, 41 F.3d 167, 172–173 (4th Cir. 1994).

*C. Jail Officers Entitled to Qualified Immunity*

As of April 2010, the alleged Eighth Amendment right was not clearly established. At the time of the alleged violation, only two courts had held that shackling during labor and delivery violated the Eighth Amendment. First, in 1994, the U.S. District Court for the District of Columbia held that the shackling of pregnant women *while in labor and shortly thereafter* represents inhumane treatment and violates the Eighth Amendment. *Women Prisoners of the D.C. Dep't of Corr. v. D.C.*, 877 F. Supp. 634, 668 (D.D.C. 1994) (emphasis added) *vacated and remanded on other grounds*, 93 F.3d 910 (D.C. Cir. 1995).

Second, in 2009, the Eighth Circuit found that shackling an inmate during the *later stages of labor* violated a clearly established Eighth Amendment right. *Nelson v. Corr. Medical Servs.*, 583 F.3d 522, 531 (8th Cir. 2009). The Eighth Circuit relied on two Supreme Court cases and the District of Columbia's district court decision in *Women Prisoners of the D.C. Dep't of Corr.* to find a clearly established right. The Supreme Court cases relied on by the Eighth Circuit do not relate to the use of restraints in the context of pregnancy or childbirth.[4]

[4] The first Supreme Court case the Eighth Circuit looked to in order to find a clearly established right, *Hope v. Pelzer*, 536 U.S. 730 (2002), held that "the prison officials had acted with deliberate indifference to the inmate's health and safety in violation of the Eighth Amendment by restraining him [to a hitching post] '[d]espite the clear lack of an emergency situation' in a manner 'that created a risk of particular discomfort and humiliation.'" *Nelson*, 583 F.3d at 532 (quoting *Hope*, 536 U.S. at 737–38). Second, the Eighth Circuit relied on the Supreme Court

Other than the opinions from the District of Columbia and the Eighth Circuit, the plaintiff fails to present any "controlling precedent" in the form of "closely analogous cases" or "a clear trend in the case law" from the Fourth Circuit, the Supreme Court, or the Virginia Supreme Court. Hence, the defendants could not have known that their actions violated Fain's Eighth Amendment rights. *See Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010); *see Wilson v. Kittoe*, 337 F.3d 392, 402–03 (4th Cir 2003). The case law existing at the time of the alleged violation would not have made it evident to a reasonable officer in Virginia that restraining Fain during and after labor violated Fain's Eighth Amendment rights. "[W]hen the legality of a particular course of action is open to reasonable dispute, an officer is not liable: under the doctrine of qualified immunity, 'officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Wilson v. Kittoe*, 337 F.3d 392, 402–03 (4th Cir. 2003) (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

Fain would like the Court to deny qualified immunity by attributing to the officers the ability to predict future court decisions. Qualified immunity specifically instructs the courts not to do so.

Additionally, Fain asks the Court to look to the fact that the Jail's policy has subsequently changed. The new policy prohibits the officers from shackling inmates prior to giving birth during labor and delivery. (Dk. No. 46-1 at 30.) Subsequent remedial measures, however, are irrelevant to prove culpable conduct. Fed. R. Evid. 407. Undoubtedly, corrections officials have many options in dealing with the issues presented here. That the defendants changed their approach does not demonstrate that their initial policy violated the Eighth Amendment. At best,

opinion in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, an inmate brought a § 1983 claim against a prison official for inadequate medical care for a back injury. "The Court concluded that interference with care or infliction of 'unnecessary suffering' establishes deliberate indifference in medical care cases in violation of the Eighth Amendment." *Nelson*, 583 F.3d at 432 (quoting *Estelle*, 429 U.S. at 103–05 (1976)). Restraints played no role in the decision.

it shows a willingness to make a change that seems reasonable, although not constitutionally required.

Thus, the officers enjoy qualified immunity. Because the Court finds that a clearly established right did not exist, the Court will not undertake the academic exercise of determining whether the use of restraints violated Fain's Eighth Amendment rights.

*D. No Liability for Superintendent Higgs*

Superintendent Higgs has no liability as the author of the Jail's Policy because, as discussed below, the Jail's Policy does not violate the Eighth Amendment. Additionally, Higgs took no part in the treatment of the plaintiff, and cannot be held liable on a respondeat superior basis. *See Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

Supervisory liability is the only remaining avenue for the plaintiff to prevail against Superintendent Higgs. "It is well settled that 'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). "Such liability is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Id.* (quoting *Slakan*, 737 F.2d at 372). Specifically, a party must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (quoting *Shaw*, 13 F.3d at 799) (internal quotation marks omitted)).

Even if an Eighth Amendment violation occurred, the plaintiff has failed to come forward with any evidence showing that Higgs was deliberately indifferent to a pervasive or unreasonable risk, that he responded inadequately to such risk, or that he somehow caused harm to the plaintiff. As discussed below, Superintendent Higgs designed a reasonable policy, and understood that the officers followed that policy. Thus, without any evidence showing supervisory liability, the Court grants summary judgment to Superintendent Higgs.

*E. Jail Authority's Policy Not an Eighth Amendment Violation*

For liability to attach to a government entity under § 1983, the entity must have "an official policy or custom which causes a deprivation of the plaintiff's constitutional or statutory rights." *Brown v. Mitchell*, 327 F. Supp. 2d 615, 629 (E.D. Va. 2004) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). Thus, Fain must show that: (1) the Jail Authority had a policy or custom of deliberate indifference to the deprivation of Fain's rights and (2) this policy caused or contributed to the complained of injury. *Id.* at 629.

Fain's claim against the Authority fails at the first step. The Jail's policy did not evidence deliberate indifference to Fain's medical needs. In fact, under the policy, correctional officers would remove shackles when instructed by medical staff that the removal was medically necessary. A policy that calls for the guards to follow medical advice on a medical issue represents the antithesis of deliberate indifference.[5] Accordingly, the Court also grants summary judgment to the Jail Authority.

---

[5] Fain offers no evidence that the Jail had an informal policy of ignoring the written rules.

## IV. Conclusion

For the reasons stated above, the Court grants the defendants' motion for summary judgment.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

Date: June 19, 2013
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge